MORIAL, Judge.
Plaintiff brought this suit to recover the balance due on a building contract for work performed on the home of defendants located at 114 Drolla Park in Jefferson Parish. Defendants filed a general denial and a reconventional demand seeking recovery of the costs of satisfactorily completing the job. The trial court rendered judgment dismissing plaintiff’s suit and awarded plaintiffs-in-reconvention $7,985.47 subject to a credit of $5,568.00 or $2,417.47. Plaintiff has appealed.
Jefferson Hebert, plaintiff’s representative, and Mrs. Grassin negotiated and exe *952 cuted a written Contract and Work Order on November 7, 1973 for the performance of certain repairs and renovations to the defendants’ residence for the price of $16,-700.00 of which one-third was due upon execution of the contract, another one-third was due after the completion of a certain portion of the work and the balance was due upon total completion of the job. Defendants refused to pay the final installment of $5,568.00 contending the work was incomplete and defective in workmanship. The trial judge found that plaintiff did not satisfactorily complete the work and award defendants the excess cost of completing the job.
Plaintiff argues on appeal that the trial court erred in finding that it did not satisfactorily complete the job in a workmanlike manner. Plaintiff also contends that the trial court erred in awarding defendants damages for the cost of completing work not included in the original contract. After reviewing the record we find that we must reject plaintiff’s arguments and affirm the findings of the trial court.
Mrs. Ursula Grassin testified that the Style Craft workers left the job in April 1974 and did not return to complete the work. In November 1974 defendant prepared a list of twenty-one items which had to be corrected in order to have the house satisfactorily completed. She submitted this list to a contractor J. K. Builders, Inc. who estimated that the work could be performed for $7,985.47. Defendants admitted that all of these items were not expressly set out in the written agreement between the parties. However, Mrs. Grassin stated positively that she and Mr. Hebert had discussed each of the listed items and he had assured her that each one was included in the original contract price. Mrs. Grassin testified that she was told that many of the items were standard and need not be set out expressly in the contract.
Jefferson Hebert, the Style Craft representative testified that all of the work required under the contract had been performed in a workmanlike manner. He admitted that various modifications had been made in the original contract but stated they were made largely to conform to changes requested by plaintiff as the work progressed. Hebert also admitted that the contract was general and by implication encompassed standard building practices followed in this field of construction. He stated that it became impossible to continue the job because Mrs. Grassin was continually changing her mind.
Mr. Edward Jemison, who was qualified as an expert in architecture, was of the opinion that the work was of poor quality and had to be redone in many areas. He testified that he was hired by defendants in late November to oversee the job. He stated that he wrote plaintiff a letter on April 4, 1974 in which he listed several items in need of correction on the job. He inspected the house on April 24, 1974 and found no progress had been made. He advised Mrs. Grassin in May to seek the advice of an attorney. Jemison stated that he again visited the home in April 1976 and found the same defects and also noted additional deficiencies in the work.
Jemison also found the written contract to be incomplete, inadequate, nebulous and one-sided. He stated that a contract of this type usually contained specifications and drawings.
It is implied in every building contract that the work of the builder will be performed in a good workmanlike manner, free from defects either in material or workmanship. Neel v. O’Quinn, 313 So.2d 286 (La.App. 3 Cir. 1975). The testimony of the defendants’ expert Mr. Jemison established that the work was of poor quality and was not satisfactorily completed. A large number of the items listed by defendants upon which the estimated cost of completion was based involved the correction of defective workmanship. The defendants are entitled to recover the costs of eliminating the defects in the work.
We must also determine whether or not defendants are entitled to recover the costs of items which were not specifically listed in the written contract. Parol *953 evidence is clearly admissible to prove a subsequent verbal agreement, modifying or even abrogating a written contract, if the contract is not required to be in writing. A construction contract need not be in writing. Anzalone v. Gregory, 334 So.2d 504 (La.App. 1 Cir. 1976). Therefore, we may consider the evidence of verbal agreements made between the parties. Mrs. Grassin testified positively that all the items included on her list were bargained for and made a part of the contract. Evidently the district judge found defendants’ testimony convincing and we must give great weight to his credibility findings since he observed the witnesses. We also find the generality of the contract itself further supports the trial court’s finding that the parties verbally agreed to many aspects of the construction project which were not expressed in writing. Therefore, defendants are entitled to recover the costs of completing the work in accord with the estimate based on Mrs. Grassin’s itemized list, with one exception. The clothes washer and dryer, identified by Mrs. Grassin by brand and model number, were not promised by the written contract although it did promise, by brand and model number, built-in stove and dishwasher. We deem it extremely unlikely that a builder would orally promise free-standing appliances by brand and model number, while writing down in a written contract the brand and model number of the built-in appliances on a form that had plenty of room left over to list the washer and dryer information as well. It is unthinkable to us that either party would rely on a contemporaneous oral agreement for items that are not part of the ordinary undertaking of a building contractor. Although other items may be of the nature of specifications or concretizations of a non-specific building contract, that cannot be said for Mrs. Gras-sin’s position that the contract included a washer and dryer. We, therefore, reduce the net award by $699.90 to $1,717.57.
For the foregoing reasons the amount of the judgment of the trial court is amended to a net for defendant of $1,717.57 and it is otherwise affirmed.

AMENDED IN PART AND AFFIRMED